# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RHONDA HUDSON,
    Plaintiff

vs

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,
    Defendant

Case No. 1:09-cv-115
(Dlott, J.)
(Hogan, M.J.)

## REPORT AND RECOMMENDATIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI). This matter is before the Court on Plaintiff's Statement of Specific Errors (Doc. 7), the Commissioner's Memorandum in opposition (Doc. 11) and Plaintiff's Reply Memorandum to the Commissioner's memorandum in opposition. (Doc. 12).

## PROCEDURAL HISTORY

Plaintiff, Rhonda Hudson, filed an application for SSI on October 24, 2002, alleging disability since July 6, 2002, due to heart disease, hypertension, asthma, carpal tunnel syndrome and depression. (Tr. 33). Plaintiff's application was denied initially and upon reconsideration. Following a hearing before an administrative law judge (ALJ), on June 9, 2005, the ALJ issued a decision denying Plaintiff's SSI application. (Tr. 41). The Appeals Council denied review on September 16, 2005. (Tr. 49-51).

Plaintiff filed a subsequent application for SSI on July 12, 2005, alleging disability since July 6, 2002, due to a Chronic Obstructive Pulmonary Disease (COPD), residuals of breast cancer with a mastectomy, diabetes, knee problems, and depression. (Tr. 74-76, 86, 99, 133).

She was born in 1965, and was 43 years old at the time of the ALJ's decision. Plaintiff completed the ninth grade and has past work experience as a general laborer and warehouse worker. (Tr. 93, 100-07). Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before an ALJ. On August 30, 2008, Plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Thaddeus J. Armstead, Sr. (Tr. 720-46). A vocational expert (VE), Suman Srinivasan, also appeared and testified at the hearing. (Tr. 747-59).

On September 24, 2008, the ALJ issued a decision denying Plaintiff's SSI application. The ALJ determined that Plaintiff suffers from the severe impairments of shortness of breath, secondary to chronic obstructive pulmonary disease; residuals of breast cancer with mastectomy; exogenous obesity; history of carpal tunnel; plantar fasciitis; and a depressive disorder, but that such impairments do not alone or in combination meet or equal the level of severity described in the Listing of Impairments. (Tr. 13, 15). According to the ALJ, Plaintiff retains the residual functional capacity (RFC) for light work with the following restrictions:

> (H)er work must be done primarily at her work station with no more than occasional work at a nearby work station; she should not climb ladders, ropes, or scaffolds, but may occasionally crouch, stoop, and kneel; she should not be exposed to extremes of heat, cold, humidity, generally obnoxious odors, fumes, gases, dust, or poor ventilation; she should not use foot pedals, leg controls, or similar lower extremity controls with the right foot; she should not work on uneven surfaces or pavements; she should not perform overhead reaching or more than frequent pushing, pulling, or handling objects; she should not perform more than simple, repetitive tasks; should not perform tasks with fast pace or strict time standards or more than occasional work setting or routine changes; and she should have occasional to less contact with co-workers, supervisors, and the public.

(Tr. 17-18). The ALJ determined that Plaintiff's allegations regarding her limitations were not totally credible. (Tr. 18). The ALJ noted that pursuant to *Drummond v. Commissioner*, 126 F. 3d 837 (6th Cir. 1997), absent new and material evidence documenting a significant change in the claimant's condition, the RFC established in a prior hearing decision by an Administrative Law Judge is binding on the present adjudicator, provided that the new claim arises under the same title of the Act. (Tr. 19). The ALJ also determined that Plaintiff was able to perform her

2

past relevant work as a general laborer and warehouse worker. (Tr. 23). Consequently, the ALJ concluded that Plaintiff is not disabled under the Act. The Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

## MEDICAL RECORD

The current administrative record does not contain any medical evidence prior to 2005. However, a review of medical evidence related to Plaintiff's prior application is contained in the administrative decision of June 9, 2005. (Tr. 33-41). That review is incorporated herein by reference.

In her Statement of Specific Errors, Plaintiff does not challenge the ALJ's findings with respect to her breast cancer, diabetes, knee problems or depression. Accordingly, the Court will focus its review of the medical evidence relating to Plaintiff's COPD.

The record contains a copy of Plaintiff's treatment notes from Middletown Regional Hospital from July 2005. Plaintiff complained of right-sided chest pain and arm pain following an almost head-on collision. Respiratory examination revealed Plaintiff had no cough or congestion, and no wheezing. Her lungs were clear to auscultation. Her breath sounds were equal bilaterally. She had good quality and regularity of respirations with no rales, rhonchi, or wheezing. Plaintiff had full range of motion of all extremities. She was given a prescription for Anaprox, an anti-inflammatory, and told to follow-up with her family physician. (Tr. 167-70).

Plaintiff treated with internist, Uma M. Santhanam, M.D., from at least January 2005[1] to May 2008. (Tr. 222-90, 442-528, 621-22, 680-86). Dr. Santhanam's treatment notes reveal that Plaintiff generally complained of problems breathing, chronic cough, shortness of breath and a night cough. *Id.* Dr. Santhanam's respiratory examinations showed good air entry; equal/clear/bilateral breath sounds and occasional expiratory wheezing. *Id.* Dr. Santhanam diagnosed asthma and COPD. Dr. Santhanam noted that Plaintiff was still smoking and counseled her to stop smoking. *See* Tr. 234, 448, 456, 460, 462, 465, 470-71, 472-73, 680.

---

[1] Plaintiff's Statement of Specific Errors states that Plaintiff began treating with Dr. Santhanam on February 27, 2002. *See* Doc. 7 at 6.

3

Dr. Santhanam's treatment included testing, medication and oxygen therapy. On numerous visits, Dr. Santhanam noted that Plaintiff's asthma was stable. (Tr. 446, 450, 454, 456, 458, 465, 467).

In April 2008, Dr. Santhanam reported that lifting and carrying were not effected by Plaintiff's impairments but then opined that she could occasionally lift and carry 5 pounds and frequently lift and carry 2 pounds. Dr. Santhanam opined that Plaintiff could stand and walk a total of 2 hours per eight-hour workday, one hour without interruption, because walking could worsen Plaintiff's shortness of breath from her asthma/COPD. Dr. Santhanam next opined that sitting was not effected by her impairments, but reported that Plaintiff could sit a total of 2 hours per eight-hour workday, one hour without interruption. Dr. Santhanam further reported that Plaintiff could only occasionally stoop and kneel and never climb, balance, crouch, or crawl. She also opined that Plaintiff's moderate - severe asthma affected her ability to push/pull as such activity could worsen her asthma/COPD. (Tr. 616-20).

A May 8, 2008, pulmonary function test revealed a severe obstruction. A hand-written note on the pulmonary test indicated that Plaintiff showed a very low Forced Expiratory Flow (FEF), below the average flow (or speed) of 25–75%, at 21% (Tr. 682-85). During the Six-Minute Walk assessment performed the same day, Plaintiff suffered from increasing shortness of breath after 3 minutes of walking due to fatigue. (Tr. 686).

On May 20, 2008, Dr. Santhanam reported that Plaintiff was dependant on her asthma/COPD medication due to her moderate to severe COPD, including her inhalers and nebulizer medications. Dr. Santhanam indicated that Plaintiff would benefit from using oxygen with activity, in addition to the oxygen she used at bed time. (Tr. 687).

State agency examining physician, Loraine Glaser, M.D. reported in September 2005, that Plaintiff's chief complaint was shortness of breath. Plaintiff reported that she could walk no more than two blocks before experiencing shortness of breath and her shortness of breath was worse when climbing stairs or walking up grades. She reported having a productive cough every morning. She indicated that she had never been hospitalized for respiratory problems. Examination revealed that Plaintiff had expiratory wheezes bilaterally, but good air movement. There were no rales, rhonchi, or evidence of cyanosis. Dr. Glaser noted no shortness of breath,

4

either at rest or with exertion. Dr. Glaser additionally observed that Plaintiff had a normal gait and appeared comfortable in both the sitting and standing positions. Her muscle strength was normal throughout, her manipulative ability was normal, and she could stand on either leg without difficultly. (Tr. 187-90). Dr. Glaser concluded:

> In summary, this is an obese middle-aged woman who states that she is unable to work due to shortness of breath. The patient reports a history of "asthma since childhood." She also has a prior history of tobacco abuse. She has multiple metered-dose inhalers and oral medications as listed above. On today's examination she was moving air fairly well and only had end expiratory wheezes. There was no dyspnea noted either at rest or with exertion. I did not appreciate any physical evidence of cardiomyopathy. The patient also has a past history of polysubstance abuse, but states she has been clean and sober for the past fifteen years.
>
> Based on the findings of this examination, the patient appears capable of performing at least a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. In addition, the patient has no difficulty reaching, grasping, and handling objects. There are no visual and/or communication limitations. The patient would obviously do best in a dust-free environment. The patient is also capable of performing sedentary work activities commensurate with her age and intellect.

(Tr. 189-90). As a part of her evaluation, Plaintiff underwent a pulmonary function study. Martin Fritzhand, M.D., interpreted the results as "[v]ery mild chronic obstructive pulmonary disease." (Tr. 194- 95).

In October 2005, state agency reviewing physician, Paul Heban, M.D. opined that Plaintiff could occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds, and stand, sit, and walk about six hours in an eight hour workday. Dr. Heban referred to the findings of Dr. Santhanam and Dr. Glaser. Dr. Heban concluded that "The RFC given is an adoption of the ALJ's RFC dated 6-09-2004 [2005]. The RFC is being adopted under AR 98-4 (Drummond Ruling)." (Tr. 213-21). In March 2006, state agency reviewing physician E.S. Villanueva, M.D., affirmed Dr. Heban's assessment. (Tr. 221).

On June 22, 2007, Plaintiff presented to The Fort Hamilton Hospital after spraining her back. Plaintiff denied any shortness of breath or difficulty breathing and her lungs were clear

to auscultation bilaterally. (Tr. 377-79). On November 6, 2007, Plaintiff presented to The Fort Hamilton Hospital with left-sided chest pain; she reported that she had also been coughing more than usual in the past four days, but that it was a non-productive cough. Examination found Plaintiff in no acute distress with her lungs clear to auscultation bilaterally with no wheezes, rales, or rhonchi. (Tr. 403-05).

Following the first administrative hearing, state agency examining physician, Phillip Swedberg, M.D. reported on July 21, 2008, that Plaintiff was a long-standing smoker with a reported seven year history of shortness of breath. Plaintiff reported that she could not walk for more than a ½ block, climb stairs, or walk up grades without shortness of breath. She reported having a daily cough and she occasionally would wake up with shortness of breath, which was relieved by sitting. She was never hospitalized or seen a pulmonologist for respiratory problems, but followed up with her primary care physician. She said she was unable to perform her housework or shopping without shortness of breath, but did all her other daily living activities. Examination revealed that Plaintiff had a normal gait, was comfortable in both sitting and supine positions and had normal strength in all extremities. Her breath sounds were distant, but there were no rales, rhonchi, wheezes, or evidence of cyanosis. Plaintiff had no shortness of breath during the examination. (Tr. 690-709).

Dr. Swedberg concluded:

In summary, this is an obese middle-aged woman who states that she is unable to work secondary to shortness of breath. As mentioned above, the patient continues to smoke despite her respiratory complaints. Discontinuation of the use of tobacco products would obviously be beneficial. The patient was comfortable in both the sitting and supine positions while breath sounds were distant. There is no evidence of wheezing or congestive heart failure. The patient was not dyspneic during the examination. She had a normal echocardiogram in April 2007 with no evidence of pulmonary hypertension.

Based on the findings of this examination, the patient appears capable of performing a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. In addition, the patient has no difficulty reaching, grasping, and handling objects. There are no visual and/or communication limitations. The patient would do best in a dust-free environment.

6

(Tr. 692-93). As a part of her evaluation, Plaintiff underwent a pulmonary function study. Martin Fritzhand, M.D., indicated that Plaintiff did not demonstrate any breathing difficulty at the time of testing. Dr. Fritzhand noted that Plaintiff's "cooperation and effort were poor." He went on to indicate that Plaintiff gagged and wretched during the entire examination. Dr. Fritzhand concluded that it was an "invalid" study. (Tr. 694-99).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 416.920. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in

substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 416.920(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 416.925(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 416.920(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and

8

background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security*, 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id., quoting, Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544, *quoting*, 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra*. On the other hand, a Social Security Ruling[2] explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting*, Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord

---

[2]Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Blakley* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rul. 96-2p, 1996 WL 374188 at *5. The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

The regulations expressly provide that the responsibility for deciding a claimant's RFC rests with the Administrative Law Judge when cases are decided at an administrative hearing.

*Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted). [20 C.F.R. § 404.1546; § 404.1527(e)(2)].

The United States Court of Appeals for the Sixth Circuit held in *Drummond v. Comm'r. of Soc. Sec.,* 126 F.3d 837 (6th Cir 1997), "the principles of res judicata can be applied against the Commissioner. When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 842 (citations omitted). "Absent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* Under *Drummond,* "The burden is on the Commissioner to prove changed circumstances and therefore escape the principles of res judicata." *Id.* at 843.

Applying res judicata in *Drummond,* the Court of Appeals held that the Commissioner was bound to the prior conclusion that claimant had the Residual Functional Capacity to perform sedentary work because the Commissioner did not produce substantial evidence showing that claimant's condition had improved significantly. *Id.* Thus, given the claimant's age and limitation to sedentary work, the Court of Appeals found her eligible for benefits. *Id.*

After *Drummond,* the Commissioner issued an Acquiescence Ruling mandating ALJs in Ohio (and other states within the Sixth Circuit) to follow *Drummond* by applying res judicata to a prior assessment of a claimant's residual functional capacity and other prior findings made as part of a sequential evaluation. The Acquiescence Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law....

AR 98-4(6), 1998 WL 283902 at *3 (June 1, 1998).

## OPINION

Plaintiff assigns three errors in this case. First, Plaintiff argues the ALJ erred in failing to consider the restrictions assigned by examining physician, Dr. Swedberg. Next, Plaintiff contends the ALJ failed to properly consider what limitations arose from her COPD. Finally, Plaintiff contends the ALJ should have accorded controlling weight to the opinion of her treating family doctor, Dr. Santhanam, in determining Plaintiff's RFC. The Court will first address Plaintiff's third Error.

In considering the opinion of Dr. Santhanam, Plaintiff's treating physician, the ALJ specifically found that such opinion was "not entitled to either controlling, deferential, even significant adjudicative weight." (Tr. 22). He first cited his impression that the limitations to Plaintiff's breathing impairment suggested by Dr. Santhanam were "not so severe as to preclude the ability to perform at least a reduced range of light work activity." *Id.* The ALJ opined that Dr. Santhanam's conclusion "also contradicts Social Security case law as his records do not document a significant change in the seveity of the claimant's pulmonary condition since June of 2005." *Id.* Finally, the ALJ rejected Dr. Santhanam's opinion because it was not well supported by the objective and clinical evidence of record and because it was inconsistent with other substantial evidence in the case record. Finding that Dr. Santhanam's findings were not supported except by "the subjective complaints of the claimant," the ALJ concluded that Dr. Santhanam does not provide references to specific objective or clinical findings in supporting his opinion and his records document generally normal pulmonary examinations with few findings, such as wheezing, rales, rhonchi, or shortness of breath. *Id.*

A review of the ALJ's decision indicates that he did apply the correct legal criteria in assessing the medical source opinion of Dr. Santhanam. Based upon his conclusions that Dr. Santhanam's opinions both were inconsistent with other medical opinions of record and were not sufficiently supported by objective medical data, the ALJ properly concluded that the treating physician rule did not apply. (Tr. 22). *See* 20 C.F.R. § 416.927(d)(2); *Blakley,* 581 F.3d at 407, *citing Wilson,* 378 F.3d at 544. He then found that Dr. Santhanam's opinion "conflict[ed] with the weight of the evidence, including objective and clinical findings in the case record." *Id.* He

thus declined to accord Dr. Santhanam's disability opinion deferential weight "for the same reasons" that it was not given controlling weight in the prior administrative decision June 9, 2005. Given this analysis, there is no basis for this Court to conclude that the ALJ failed to apply the appropriate legal standards to Dr. Santhanam's opinion. *See Blakley,* 581 F.3d at 407 and *Wilson,* 378 F.3d at 544.

Likewise, the ALJ's decision to reject Dr. Swedberg's extreme limitations is substantially supported. As the ALJ noted, Dr. Swedberg's conclusion that Plaintiff's "ability to sit or stand, reach, use her feet, or completely precluding all postural work activities, such as stooping, balancing, kneeling, crouching, or crawling," was not based on his diagnoses nor his clinical or objective findings. (Tr. 22). Nor has Plaintiff demonstrated that Dr. Swedberg's report is supported by the objective and clinical evidence of record. Contrary to Plaintiff's request, the ALJ was not obligated to convene a supplemental hearing in response to Dr. Swedberg's report. *See Foster* v. *Halter,* 279 F.3d 348,355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary.").

The ALJ's decision to give Dr. Glaser's opinion significant weight is substantially supported by the record. Dr. Glaser's opinion was consistent with the opinions of the other physicians of record. As the ALJ's decision reflects, neither Dr. Glaser, Dr. Fritzhand, Dr. Heban, nor Dr. Villanueva provided such extreme limitations as Dr. Santhanam or Swedberg. (Tr. 22). During pulmonary function test, Dr. Fritzhand was unable to assess Plaintiff's functional limitations due to a lack of cooperation from Plaintiff and because the tests results were considered invalid. (Tr. 194-95, 682-85, 694-99). As noted above Dr. Heban, based on a review of Dr. Glaser's examination, the findings of Dr. Santhanam and the other evidence of record, opined that the evidence did not support the physical limitations claimed by Plaintiff. (Tr. 213-21).

The ALJ is ultimately responsible for assessing a claimant's RFC, taking into consideration the opinions of medical sources and other relevant evidence. *See* 20 C.F.R. §§ 416.927(e), 416.945. In this case, the ALJ was faced with inconsistent and contradictory evidence. On the one hand, Drs. Santhanam and Swedberg opined that Plaintiff was unable to perform even sedentary work. On the other hand, Drs. Glaser, Heban, and Villanueva opined

13

that Plaintiff was not so limited. In determining Plaintiff's RFC, the ALJ acknowledged these extremes and reasonably devised an RFC for a limited range of light work. The ALJ took into consideration all of the medical evidence of record and reasonably accommodated Plaintiff's impairments by limiting Plaintiff to a range of light work. (Tr. 18-20). It is the ALJ's function to resolve inconsistencies and conflicts in the medical evidence, *see King* v. *Heckler,* 742 F.2d 968, 974 (6th Cir. 1984), and the record reveals that the ALJ considered all of the medical evidence in assessing Plaintiff's RFC. Therefore, Plaintiff's first and third assignments of error are not well-taken and should be overruled.

Turning to Plaintiff's second assignment of error, she complains that the ALJ failed to take into account greater limitations from her COPD. However, the RFC found by the ALJ accommodated limitations on Plaintiff's physical ability to engage in work-related activities, *e.g.,* work must be done primarily at her work station, postural limitations and she should not be exposed to extremes of heat, cold, humidity, generally obnoxious odors, fumes, gases, dust, or poor ventilation. *See* Tr. 17. The ALJ noted, "Despite her breathing impairment and her physicians' recommendations to stop, the claimant continues to smoke approximately one pack of cigarettes per day." (Tr. 18). Plaintiff argues that the May 8, 2008, pulmonary function test revealed breathing difficulties consistent with a severe obstruction, *clearly below listing level values. See* Doc. 7 at 4, emphasis in original. What Plaintiff fails to comment upon is a hand-written note on the pulmonary test results which indicated that Plaintiff showed a very low Forced Expiratory Flow (FEF), below the average flow (or speed) of 25–75%, at 21% (Tr. 682-83). Thus the May 8, 2008, test produced no acceptable test results. Significantly, Plaintiff does not specify what additional limitations, beyond those specified in the ALJ's RFC, result from her COPD.

## CONCLUSION

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to

14

direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

Because substantial evidence supports the decision of the ALJ, the Court hereby **RECOMMENDS THAT** his decision be **AFFIRMED** and that this case be **DISMISSED** from the docket of the Court.

Date: 2/17/10

Timothy S. Hogan
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Batten\Hudson.wpd